**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JONATHAN BLUM, Individually and on behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>v.<br><br>ANAVEX LIFE SCIENCES CORPORATION and CHRISTOPHER U. MISSLING,<br><br>      Defendants. | Case No.: 1:24-cv-01910-CM<br><br>**QUINTESSA HUEY'S OPPOSITION TO COMPETING MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |
| KENNETH DOWNING, Individually and on behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>v.<br><br>ANAVEX LIFE SCIENCES CORPORATION and CHRISTOPHER U. MISSLING,<br><br>      Defendants. | Case No. 1:24-cv-03529-CM |

## <u>TABLE OF CONTENTS</u>

<u>**Page**</u>

I.     INTRODUCTION ........................................................................................................... 1

II.    ARGUMENT ................................................................................................................. 3

    A.   The PSLRA Process.......................................................................................... 3

    B.   Quintessa Huey Is the Presumptive Lead Plaintiff. ......................................... 4

        1.   *Quintessa Huey Has the Largest Financial Interest.* ................................... 4

        2.   *Ms. Huey Meets the Typicality and Adequacy Requirements of Rule 23.* ................... 5

    C.   The Court Should Reject Mr. Downing's Proposed Class Period as It Is Implausible and "Obviously Frivolous". ................................................................. 6

III.   CONCLUSION................................................................................................................ 9

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Brady v. Top Ships Inc.,*
 324 F. Supp. 3d 335 (E.D.N.Y. 2018) ............................................................... 4, 6

*Chahal v. Credit Suisse Grp. AG*,
 Nos. 18-CV-2268 *et al.,* 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018) .......... 1, 5

*Faris v. Longtop Fin. Techs. Ltd.,*
 No. 11 Civ. 3658 (SAS); 11 Civ. 3661 (SAS), 2011 U.S. Dist. LEXIS 112970, Fed. Sec.
 L. Rep. (CCH) P96,562 (S.D.N.Y. Oct. 4, 2011) .................................................. 5

*In re Centerline Holding Co. Sec. Litig.,*
 08 Civ. 505 (SAS), 08 Civ. 1026 (SAS), 08 Civ. 1158 (SAS), 08 Civ. 1458 (SAS), 08
 Civ. 1593 (SAS), 08 Civ. 1902 (SAS), 2008 U.S. Dist. LEXIS 36406 (S.D.N.Y. May 5,
 2008) ..................................................................................................... 7

*In re Comverse Tech., Inc. Sec. Litig.,*
 No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028  (E.D.N.Y. Mar. 2, 2007) ........................ 4

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization,*
 *LLC*,
 616 F. Supp. 2d 461 (S.D.N.Y. 2009) ............................................................... 4

*Maliarov v. Eros Int'l PLC*,
 15-CV-8956 (AJN); 16-CV-223 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5,
 2016) ................................................................................................... 8, 9

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*,
 256 F.R.D. 620 (E.D. Wis. 2009) ................................................................... 7

*Villare v. Abiomed, Inc.,*
 19 Civ. 7319 (ER); 19 Civ. 9258 (ER), 2020 U.S. Dist. LEXIS 114684 (S.D.N.Y. June
 29, 2020) .............................................................................................. 2, 8

**Statutes**

15 U.S.C. §78u-4 ....................................................................................... 1, 3, 4

## I.      INTRODUCTION

This securities fraud class action is governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires courts at the outset to appoint a "lead plaintiff" and "lead counsel" to oversee and conduct the litigation. 15 U.S.C. §78u-4(a)(3). The role of "lead plaintiff" is important insofar as the individuals appointed are trusted with overseeing their lawyers and serving in a fiduciary capacity to act in the best interests of their fellow class members. To aid courts in their decision, the PSLRA provides a straightforward process for assessing the competing applicants. It gives preference to the movant with the "largest financial interest" in the action and otherwise satisfies the typicality and adequacy requirements of Rule 23. This preference or presumption can only be rebutted by actual "proof" that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

In this District, Courts routinely consider a movant's claimed loss as most determinative. *Chahal v. Credit Suisse Grp. AG,* Nos. 18-CV-2268 *et al*., 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018). Quintessa Huey, on behalf of herself and her family members, is the presumptive lead plaintiff as she has the largest financial interest of any movant, having lost $123,030 from trading in Anavex Life Sciences Corporation ("Anavex") securities. Ms. Huey, a sophisticated businesswoman with significant trading and legal experience, easily meets the typicality and adequacy requirements of Rule 23.

One issue stands to complicate this straightforward analysis. On Wednesday, May 8, 2024, three business days before the 60-day deadline for filing lead plaintiff motions (*i.e.*, Monday, May 13, 2024), plaintiff Kenneth Downing filed a new complaint with a materially different class period. The initial complaint presented a class period of February 1, 2022 through January 1, 2024;

Mr. Downing's complaint extended the class period back in time by seven months to begin on June 21, 2021. While financial interests at the lead plaintiff stage may be assessed under the most inclusive class period, "numerous courts have cautioned that blindly accepting the longest class period without any inquiry may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest." *Villare v. Abiomed, Inc*., No. 19 Civ. 7319 (ER), 2020 U.S. Dist. LEXIS 114684, at *9 (S.D.N.Y. June 29, 2020). Even the most cursory of looks at Mr. Downing's proposed class period shows that it is an attempt to "manipulate" his way into having "the largest financial loss."

As evident from Mr. Downing's "Certification" filed with the complaint, virtually all of his investment in Anavex takes place during the seven-month period prior to the start of the initial class period. In fact, compared to his overall investment of 24,000 shares, only 2,000 of those shares were purchased during the original February 1, 2022 through January 1, 2024 class period. At that, Mr. Downing actually had a ***gain*** of $2,355 during that time based upon his transactions during period. Mr. Downing and his counsel filed an additional complaint with a new class period to get around this issue. *See In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 173 (W.D.N.Y. 2007) (collecting cases and noting that "[c]ourts have consistently rejected applications for lead plaintiff status made by 'net sellers' and 'net gainers,' recognizing that they may in fact have profited, rather than suffered, as a result of the inflated stock prices").

The timing of Mr. Downing's actions relative to the May 13, 2024 deadline suggest that the new complaint was filed in gamesmanship. This conclusion is supported by the fact that the alleged theory of fraud does not (indeed, cannot) extend back in time to the June 21, 2021 class period start-date when Mr. Downing appears to have purchased the majority of his shares. As alleged in both the initial complaint and Mr. Downing's, investors sustained losses when Anavex

2

announced on January 2, 2024 that Defendants had not evaluated its EXCELLENCE study using the same evaluation methods from its AVATAR study. *Defendants first represented they would use the same evaluation methods on February 1, 2022, thereby making it impossible for investors to have been misled at any point beforehand.*

Mr. Downing's actions warrant careful scrutiny. Having virtually no financial interest in the outcome of the case under the original class period, he and his counsel would be uniquely motivated to pursue a very narrow (if not altogether non-existent) theory of the case at the expense of the class at large. Accordingly, the Court should reject the expanded class period proposed by Mr. Downing and grant Ms. Huey's motion in its entirety.[1]

## II.    ARGUMENT

### A.    The PSLRA Process

The PSLRA sets forth the procedure for the selection of a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as Lead Plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). This straightforward leadership selection provides that the "person or group of persons" with the largest loss is the presumptive lead plaintiff and must be appointed lead so long as it is otherwise adequate and typical within the meaning of Rule 23. 15 U.S.C. §78u–4(a)(3)(B)(i) and (iii)(I)(bb)-(cc).

---

[1] Given the difference in legal theories between the *Blum* and *Downing* Actions, consolidation would not advance "convenience or judicial economy" but instead risk confusion and complicate the progression of the cases as they move forward. *See Carlyle Aviation Mgmt. v. Frontier Airlines, Inc.*, 2024 U.S. Dist. LEXIS 7629, at *39-40 (S.D.N.Y. Jan. 16, 2024) (denying motion for consolidation where cases presented different liability theories). Consequently, Ms. Huey opposes consolidation if the Court is inclined to adopt Mr. Downing's proposed class period.

Congress created the lead plaintiff presumption because it believed that the movant with the largest loss would be most incentivized to actively prosecute the securities class action and monitor counsel:

> Further, the provisions created a "rebuttable presumption" that the most "adequate plaintiff" is, inter alia, the person or group of persons that "has the largest financial interest in the relief sought by the class." "The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff – frequently a large institution or otherwise sophisticated investor – would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price."[2]

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009).

After a presumptively most adequate plaintiff is identified, the Court must then determine if the presumption has been rebutted through "proof" by a member of the purported plaintiff class that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the presumptively most adequate plaintiff should be appointed as lead plaintiff.

## B.   Quintessa Huey Is the Presumptive Lead Plaintiff.

### 1.   *Quintessa Huey Has the Largest Financial Interest.*

While the PSLRA does not define "financial interest," Courts in the second Circuit and this District, typically find that the amount of financial loss claimed by a lead plaintiff movant is the most significant factor to be considered. *See, e.g., In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028, at *16 (E.D.N.Y. Mar. 2, 2007) (recognizing that most

---

[2] Unless otherwise noted, citations are omitted, and emphasis is added.

courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *Chahal,* 2018 U.S. Dist. LEXIS 104185, at *12) (equating financial interest with economic loss). Courts will also consider other factors when determining a movant's financial interest, if necessary, such as retained shares, and funds expended.

Using the original class period of February 1, 2022 through January 1, 2024, Ms. Huey's and Mr. Downing's financial interests compare as follows:

| Movant | Shares Purchased | Net Shares Retained | Funds Expended | LIFO Loss |
|---|---|---|---|---|
| Quintessa Huey | 74,707 | 64,197 | $484,856.21 | $123,030.15 |
| Kenneth Downing | 2,000 | 1,000 | $3,272.70 | ($2,355.99) |

*See* Exhibit A to Supplemental Declaration of Adam M. Apton.

As demonstrated above, it is quite clear that Ms. Huey possesses the largest financial interest of any movant before the Court, as she suffered the largest loss, purchased the most shares, retained the most shares, and expended the most funds out of all movants.

### 2. *Ms. Huey Meets the Typicality and Adequacy Requirements of Rule 23.*

In addition to possessing the greatest financial interest, Ms. Huey satisfies the adequacy and typicality requirements of Rule 23. "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a 'preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Faris v. Longtop Fin. Techs. Ltd.,* No. 11 Civ. 3658 (SAS); 11 Civ. 3661 (SAS), 2011 U.S. Dist. LEXIS 112970, Fed. Sec. L. Rep. (CCH) P96,562, at *12 (S.D.N.Y. Oct. 4, 2011) (quoting *In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,* 258 F.R.D. 260, 268 (S.D.N.Y. 2009)). "Typicality 'requires that the claims of the class representatives be typical of those of the class and is satisfied when each class

member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id*. "The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that [he] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class." *Id*. (ellipsis omitted).

As set forth in greater detail in her initial memorandum in support of the instant motion (the "Opening Brief") (ECF No. 14), Ms. Huey's claims are based on the same legal theories and arise from the same event or practice or course of conduct that gives rise to the claims of other class members. Likewise, Ms. Huey's certification pursuant to the federal securities laws, (ECF No. 15-1), her Declaration detailing her motivation and intention to oversee this litigation (ECF No. 15-4), and her selection of experienced and capable counsel in Levi & Korsinsky demonstrate that Ms. Huey does not have interests antagonistic to the class and will adequately represent the interests of the proposed class. Accordingly, Ms. Huey has made a preliminary showing that she satisfies the adequacy and typicality requirements of Rule 23.

As Ms. Huey has the largest financial interest in the litigation and satisfies the adequacy and typicality requirements of Rule 23, she is entitled to the presumption of being the "most adequate plaintiff" to represent the Class.

C.    **The Court Should Reject Mr. Downing's Proposed Class Period as It Is Implausible and "Obviously Frivolous".**

Three business days before the PSLRA lead plaintiff deadline in the above-captioned *Blum* Action, an additional complaint against Defendants was filed by Mr. Downing, purporting to

expand the class period defined in the *Blum* Action back by over seven months.[3] The *Blum* Action defined the class period as February 1, 2022 through January 1, 2024, inclusive, while the *Downing* Action proposes an expanded class period from June 21, 2021 through January 1, 2024, inclusive.

An extended class period that is wholly implausible as pleaded from the face of the complaint cannot, and will not, be adopted as the governing class period for purposes of determining the movant with the largest financial interest in the litigation. *In re Centerline Holding Co. Sec. Litig.,* No. 08 Civ. 505 (SAS), 2008 U.S. Dist. LEXIS 36406, at *12 (S.D.N.Y. May 5, 2008). Further, an expanded class period that is "obviously frivolous" should not be adopted at the lead plaintiff stage as "unscrupulous movants" might be encouraged to "allege longer class periods in an effort to manipulate the lead plaintiff determination". *Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.*, 256 F.R.D. 620, 625 (E.D. Wis. 2009).

In this instance, Mr. Downing's proposed class period is implausible and obviously frivolous. Defendants' alleged fraud arises from the release of Anavex's AVATAR study results on February 1, 2022. It was on that day that Defendants told the market it would use AVATAR's evaluation methods in its next study, EXCELLENCE. *See Blum* Action, ¶60. That ultimately proved to be false when, on January 2, 2024, Defendants revealed that EXCELLENCE did ***not*** use AVATAR's evaluation methods. *Id.* at ¶¶67-72. Thus, prior to these statements being made on February 1, 2022, there was no fraud in the marketplace.

The *Downing* Action rests on the same corrective disclosure, *i.e.*, the January 2, 2024 announcement concerning the EXCELLENCE study. *See Downing* Action, ¶¶62-71. Moreover, the *Downing* Action does not contain any statement from Defendants prior to February 1, 2022,

---

[3] The additional action is entitled *Downing v. Anavex Life Sciences Corp., et al.*, No 1:24-cv-03529-CM (S.D.N.Y.) ("*Downing* Action").

claiming that EXCELLENCE will use the same evaluation methods as AVATAR. *See id.* at ¶¶28-41.

Mr. Downing's class period appears to be a product of gamesmanship. Although in securities class actions the more inclusive class period may be used when assessing financial interests at the lead plaintiff stage, "numerous courts have cautioned that blindly accepting the longest class period without any inquiry may encourage attempts by potential lead plaintiffs to manipulate the class period so that they have the largest financial interest." *Abiomed,* 2020 U.S. Dist. LEXIS 114684, at *9. In *Abiomed*, plaintiff/movant Barry, attempted to expand the class period hours before the PSLRA deadline, and in doing so inflated Barry's losses by almost $200,000. *Id.* at *13. Judge Ramos concluded that the longer class period proposed at the eleventh hour should not be used for purposes of the lead plaintiff analysis, due to concerns that the expansion was merely a product of gamesmanship. *Id.*

Mr. Downing's actions are no different than Barry's in *Abiomed*. By expanding the class period backwards by seven months on the eve of the 60-day PSLRA deadline, Mr. Downing was able to gain "credit" for thousands of shares that otherwise would not be eligible due to the fact that they were not purchased in the original class period, *i.e.*, after February 1, 2022. Indeed, out of the entire 24,000 shares purchased by Mr. Downing, only 2,000 shares were purchased in the original class period. *See* Exhibit A to Supplemental Declaration of Adam M. Apton.

Mr. Downing's gamesmanship to manipulate the class period in the eleventh hour should not be tolerated or rewarded. Courts in this District have consistently expressed their reluctance "to encourage lead plaintiff movants to file complaints with additional disclosure allegations in the eleventh hour, thereby precluding similarly-situated potential movants from identifying themselves to the Court." *Maliarov v. Eros Int'l PLC*, 15-CV-8956 (AJN); 16-CV-223 (AJN),

2016 U.S. Dist. LEXIS 46082, at *10-12 (S.D.N.Y. Apr. 5, 2016). Here, as in *Eros*, a complaint expanding the class period was filed well into the 60-day PSLRA timeframe which meant individuals who would otherwise "be able to meet the requirements of a lead plaintiff motion" under the expanded disclosure date would be "precluded from filing such motions given the expiration of the PSLRA's time limit for doing so." *Eros*, 2016 U.S. Dist. LEXIS 46082, at *12 (citing *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 620 (S.D.N.Y. 2015)). "The specter of gamesmanship on these facts causes the Court to question whether [Plymouth] will 'fairly and adequately protect the interests of the class.'" *Eros*, 2016 U.S. Dist. LEXIS 46082, at *12 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa)). *See also Ragan v. Appharvest, Inc.*, No. 21-cv-7985 (LJL), 2021 U.S. Dist. LEXIS 238168, at *21 (S.D.N.Y. Dec. 13, 2021) (rejecting proposed new class period because "at the time that Plymouth County made its purchases, neither Novus nor AppHarvest could have made any statements the falsity of which was demonstrated or corrected by the August 2021 release").

## III.    CONCLUSION

For the foregoing reasons, Ms. Huey respectfully requests that the Court grant her Motion and enter an Order: (1) appointing Movant as Lead Plaintiff, (2) approving her selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

*[Signature on following page]*

Dated: May 28, 2024                     Respectfully Submitted,


**LEVI & KORSINSKY, LLP**

By: _/s/ Adam M. Apton_
Adam M. Apton (AS-8383)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

_Lead Counsel for Quintessa Huey and_
_[Proposed] Lead Counsel for the Class_

10