UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JONATHAN BLUM, Individually and on behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ANAVEX LIFE SCIENCES CORPORATION and CHRISTOPHER U. MISSLING,<br><br>Defendants. | Case No.: 1:24-cv-01910-CM<br><br>**QUINTESSA HUEY'S REPLY TO COMPETING MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF SELECTION OF COUNSEL** |
| KENNETH DOWNING, Individually and on behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>ANAVEX LIFE SCIENCES CORPORATION and CHRISTOPHER U. MISSLING,<br><br>Defendants. | Case No. 1:24-cv-03529-CM |

**TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................................ 1

II. ARGUMENT ...................................................................................................................... 2

    A. Movant Kenneth Downing Profited from the Fraud under the *Blum* Class Period and Therefore Must Pursue the *Downing* Class Period, No Matter the Harm It Causes to the Class at Large. ................................................................. 2

    B. The *Downing* Class Period Undermines Plaintiff's Theory of Falsity, Scienter, and Loss Causation. .................................................................................. 5

    C. Mr. Downing Can Pursue His Own Theory of Liability in the *Downing* Action Without Consolidation. ............................................................................... 7

III. CONCLUSION ................................................................................................................... 8

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*In re Bausch & Lomb Inc. Sec. Litig.*,
   244 F.R.D. 169 (W.D.N.Y. 2007) .................................................................................................. 3

*City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*,
   No. 1:17 CV 1677, 2017 U.S. Dist. LEXIS 199868 (N.D. Ohio Dec. 4, 2017) ........................ 4

*Foley v. Transocean, Ltd.*,
   272 F.R.D. 126 (S.D.N.Y. 2011) ................................................................................................ 4

*Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
   903 F.2d 176 (2d Cir. 1990) ...................................................................................................... 4

*Gordon v. Sonar Capital Mgmt. LLC*,
   92 F. Supp. 3d 193 (S.D.N.Y. 2015) .......................................................................................... 3

*Gutman v. Sillerman*,
   No. 15 Civ. 7192 (CM), 2015 U.S. Dist. LEXIS 179553 (S.D.N.Y. Dec. 8, 2015) ................. 6

*Maliarov v. Eros Int'l PLC*,
   15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082 (S.D.N.Y. Apr. 5, 2016) ......................... 6

*May v. Barclays PLC*,
   No. 23-cv-2583 (LJL), 2023 U.S. Dist. LEXIS 162416 (S.D.N.Y. Sep. 13, 2023) ................. 3

*Police & Fire Ret. Sys. v. SafeNet, Inc.*,
   No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959 (S.D.N.Y. Feb. 21, 2007) ................ 5

*Ragan v. Appharvest, Inc.*,
   No. 21-cv-7985 (LJL), 2021 U.S. Dist. LEXIS 238168 (S.D.N.Y. Dec. 13, 2021) ................. 6

*Topping v. Deloitte Touche Tohmatsu CPA*,
   95 F. Supp. 3d 607 (S.D.N.Y. 2015) .......................................................................................... 6

*Winer Family Trust v. Queen*,
   503 F.3d 319 (3d Cir. 2007) ...................................................................................................... 4

**Other Authorities**

7 William B. Rubenstein, Newberg on Class Actions S22:42 (5th ed. 2017) ................................ 4

**I.    INTRODUCTION**

The Court's decision on lead plaintiff in this action will perhaps have a larger impact on the case than expected. Ms. Huey and Mr. Downing, the only two shareholders vying for lead plaintiff, have very different views on how the case should be litigated. Ms. Huey would keep the class period alleged in the first filed *Blum* action and focus on Defendants' alleged misrepresentations about the EXCELLENCE study while Mr. Downing would keep the class period in the *Downing* action which starts approximately seven months earlier and focuses on statements about the earlier AVATAR study. The divergence between the two litigation strategies necessitates a review of the allegations and, in particular, the merits and motivations behind the expanded class period alleged in the *Downing* action.

During the *Blum* Class Period, Mr. Downing purchased only 2,000 shares of Anavex Life Sciences Corporation stock, sold 1,000 shares, and netted out with a gain of approximately $2,355. The vast majority of his investment was made before the *Blum* Class Period began. By comparison, during the *Downing* Class Period, Mr. Downing can claim purchases of 24,000 shares and losses of approximately $235,000. Thus, unless Mr. Downing can pursue the *Downing* Class Period, he has no financial interest in the outcome of the action and cannot represent the class.

Mr. Downing's reasons for pursuing the *Downing* Class Period render him atypical and subject to unique defenses. They also give rise to a conflict. The *Downing* Class Period starts seven months earlier than the *Blum* Class Period. During those seven months, the *Downing* action identifies a handful of alleged false statements. None of these false statements makes any comparison between the evaluation methods used in the EXCELLENCE and AVATAR studies, which is at the core of the action against Defendants. At most, they generally comment on the existence of the studies themselves. Nothing about these statements is "corrected" at the end of the

class period when Defendants reveal that the EXCELLENCE study did *not* employ the same evaluation methods used in the AVATAR study. Thus, there is no basis for including these statements in the case or, put differently, expanding the class period to start seven months before the start of the *Blum* Class Period. Although the *Downing* Class Period is meritless, Mr. Downing will certainly pursue it if he is appointed as the lead plaintiff and in turn jeopardize the success of the case.

One solution that would allow both Ms. Huey and Mr. Downing to pursue their distinct theories of the case would be to keep the cases separate (*i.e.*, deny consolidation). While securities class actions are often consolidated, the consolidated actions typically involve identical theories of liability. That is not present here. Consequently, denying consolidation would appear to serve in the best interests of all parties.

## II. ARGUMENT

### A. Movant Kenneth Downing Profited from the Fraud under the *Blum* Class Period and Therefore Must Pursue the *Downing* Class Period, No Matter the Harm It Causes to the Class at Large.

Mr. Downing says nothing about his financial interest under the *Blum* Class Period. This is because he has no financial interest under the *Blum* Class Period. The following tables illustrate the differences in financial interests between the movants under both the *Blum* and *Downing* Class Periods:

Table 1: *Blum* Class Period (February 1, 2022 through January 1, 2024)

| Movant | Shares Purchased | Net Shares Retained | Funds Expended | LIFO Loss |
|---|---|---|---|---|
| Quintessa Huey | 74,707 | 64,197 | $484,856.21 | $123,030.15 |
| Kenneth Downing | 2,000 | 1,000 | $3,272.70 | ($2,355.99) |

Dkt. Nos. 15-2, 22-1.

Table 2: *Downing* Class Period (June 21, 2021 through January 1, 2024)

| Movant | Shares Purchased | Net Shares Retained | Funds Expended | LIFO Loss |
|---|---|---|---|---|
| Quintessa Huey | 74,707 | 64,197 | $484,856.21 | $123,030.15 |
| Kenneth Downing | 24,000 | 21,000 | $313,746.34 | $235,106.08 |

Dkt. Nos. 15-2, 19-2.

The above tables make clear three important points each weighing in favor of granting Ms. Huey's motion for lead plaintiff. First, under the *Blum* Class Period, Ms. Huey possesses the larger financial interest compared to Mr. Downing who, according to his LIFO calculation, walked away with a gain. Ms. Huey and her family members collectively lost $123,030.15 while Mr. Downing ended up with a gain of $2,355.99 due to selling 1,000 shares during the *Blum* Class Period at a profit. *See* Dkt. No. 22-1. "Net gainers," like Mr. Downing, cannot serve as lead plaintiffs. *See, e.g.*, *In re Bausch & Lomb Inc. Sec. Litig.*, 244 F.R.D. 169, 174 (W.D.N.Y. 2007) (disqualifying movant for lead plaintiff due to status as "net gainer") (collecting cases).[1]

Second, Mr. Downing's gain during the *Blum* Class Period gives rise to a conflict. Mr. Downing will forever prioritize the *Downing* Class Period and the theory of liability it carries because he will never be able to serve as an adequate class representative under the *Blum* Class Period. *See Gordon v. Sonar Capital Mgmt. LLC*, 92 F. Supp. 3d 193, 201-02 (S.D.N.Y. 2015) (finding lead plaintiff atypical where he was "subject to the unique defense that he suffered no

---

[1] Mr. Downing notes the "assignments" attached to Ms. Huey's motion. Dkt. No. 12-13. Ms. Huey received these assignments from her partner and children because they were the beneficial owners of the Anavex securities at issue, even though Ms. Huey made the investments. Dkt. No. 15-4, ¶2. Thus, unlike the assignments used in the *May v. Barclays PLC* decision cited by Mr. Downing, Ms. Huey's were not used to improperly aggregate losses among independent legal entities and persons. *See May v. Barclays PLC*, No. 23-cv-2583 (LJL), 2023 U.S. Dist. LEXIS 162416, at *49-50 (S.D.N.Y. Sep. 13, 2023).

economic loss," as his "gains and avoided losses during the various class periods exceeded any losses he may have suffered during those periods"). Thus, even if it is in the best interests of the overall class to pursue the *Blum* Class Period, Mr. Downing will place his interests in pursuing the *Downing* Class Period above all else (including his unnamed class members whom he would be tasked with representing). This conflict disqualifies Mr. Downing from serving as the lead plaintiff in this action. *See Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) ("[r]egardless of whether the issue is framed in terms of the typicality of the representative's claims or the adequacy of its representation, there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it."); *see also Winer Family Trust v. Queen*, 503 F.3d 319, 323-25 (3d Cir. 2007) (plaintiff lost standing to pursue claims after court dismissed claims based on misrepresentations occurring in first part of class period).

Third, even if the Court were to provisionally adopt the *Downing* Class Period, Ms. Huey still has a larger financial interest in the outcome of the action based on three out of the four *Lax-Olsen* factors. Courts routinely apply the following four-factor *Lax-Olsen* test when comparing "financial interests" at the lead plaintiff stage: (1) the number of shares purchased; (2) the number of net shares purchased; (3) the total net funds expended by the plaintiffs during the class period; and (4) the approximate losses suffered by the plaintiffs. *See* 7 William B. Rubenstein, Newberg on Class Actions S22:42 (5th ed. 2017); *see, e.g., Foley v. Transocean, Ltd.*, 272 F.R.D. 126, 127-28 (S.D.N.Y. 2011). Courts weigh the various *Lax-Olsen* factors against each other and, on occasion, will ultimately rule in favor of a movant even when that movant does not possess the greatest approximate loss (*i.e.*, factor four). *See, e.g., City of Hollywood Firefighters' Pension Fund v. TransDigm Grp., Inc.*, No. 1:17 CV 1677, 2017 U.S. Dist. LEXIS 199868, at *9 (N.D. Ohio

Dec. 4, 2017) (holding the movant that prevailed on the first three factors had the largest financial interest even though they had an approximately $36,000 smaller loss); *Police & Fire Ret. Sys. v. SafeNet, Inc.*, No. 06 Civ. 5797 (PAC), 2007 U.S. Dist. LEXIS 97959, at *5-7 (S.D.N.Y. Feb. 21, 2007) (holding a small difference in LIFO loss "cannot dictate such an important result" when the competing movant had more "gross purchases, net purchases, and net funds expended").

### B. The *Downing* Class Period Undermines Plaintiff's Theory of Falsity, Scienter, and Loss Causation.

When taking the above three points into account, the "gamesmanship" behind Mr. Downing's eleventh-hour filing becomes apparent. Mr. Downing has no economic loss under the *Blum* Class Period; consequently, he would have been blatantly ineligible for the lead plaintiff position had he not filed the *Downing* action with the expanded class period. Mr. Downing's basis for expanding the class period, however, is meritless.

Defendants deceived investors concerning the EXCELLENCE study and the methods they would use to evaluate its results. *Blum* Action, Dkt. No. 1. They told the public that they would use the same evaluation methods they used in the prior study (*i.e.*, the AVATAR study). *Id*. at ¶60. At the end of the class period, Defendants revealed that they were in fact not using the same evaluation methods from the AVATAR study but a variation of those methods that materially undermined the credibility and reliability of the EXECELLENCE study and sent Anavex's stock price plummeting. *Id*. at ¶¶67-72. Critically, the theory of fraud arises from an interaction between Anavex's CEO, Christopher Missling, and an analyst from BTIG, Yun Zhong, wherein Mr. Zhong asks Defendant Missling point-blank whether the EXCELLENCE study would be using the same evaluation methods as the AVATAR study and Missling answers in the affirmative. *Id*. at ¶60.

5

Mr. Downing disregards the importance of this interaction both in terms of its implications on falsity and scienter, claiming that the alleged fraud started nearly seven months earlier. During that seven-month period, however, **none of the alleged false statements in the Downing action represents that the EXCELLENCE study would follow the AVATAR study's evaluation methods**. *See Downing* Action, Dkt. No. 1, ¶¶28-41 (alleged misrepresentations during seven-month period before *Blum* Class Period). This means that the alleged false statements (which refer only generally to Anavex's clinical trials) were not "corrected" by the corrective disclosure occurring on January 2, 2024. *See Blum* Action, Dkt. No. 1 at ¶¶67-73; *Downing* Action, Dkt. No. 1 at ¶¶62-67. Thus, the statements relied upon by Mr. Downing when alleging his broader class period are unrelated to the theory of liability in this case.[2]

Where, as here, a class period is changed materially on the eve of the PSLRA's 60-day lead plaintiff deadline, courts evaluate its legitimacy by scrutinizing the basis for the change. *See Ragan v. Appharvest, Inc.*, No. 21-cv-7985 (LJL), 2021 U.S. Dist. LEXIS 238168, at *21 (S.D.N.Y. Dec. 13, 2021); *Maliarov v. Eros Int'l PLC*, No. 15-CV-8956 (AJN), 2016 U.S. Dist. LEXIS 46082, at *10-12 (S.D.N.Y. Apr. 5, 2016) (citing *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 620 (S.D.N.Y. 2015)); *see also Gutman v. Sillerman*, No. 15 Civ. 7192 (CM), 2015 U.S. Dist. LEXIS 179553, *9-10 (S.D.N.Y. Dec. 8, 2015) (holding movant engaged in "gamesmanship" by filing complaint after 60-day deadline). Mr. Downing's basis for changing the class period does not hold water and, therefore, should be rejected. That would leave Ms. Huey as the presumptive

---

[2] Taking an even closer look at Mr. Downing's investment history relative to the allegations in the *Downing* action, the majority of his losses stem from purchases made either before or during September 2021. *See* Dkt. No. 19-2 (loss chart showing more than half of investment in Anavex was made between July 2021 and September 2021). Thus, the misrepresentations upon which Mr. Downing bases his case are further limited in number and make ***no*** reference to the EXCELLENCE study's evaluation methods. *See Downing* Action, Dkt. No. 1 at ¶¶28-32.

lead plaintiff and clear the way for her to pursue the class claims in the best interests of the class as a whole.

### C.    Mr. Downing Can Pursue His Own Theory of Liability in the *Downing* Action Without Consolidation.

Mr. Downing places emphasis on his allegation that the disclosure on February 1, 2022 is "more properly pled as a partial corrective disclosure of the truth." Dkt. No. 23 at 9. The disclosure that occurred on February 1, 2022 consists of Anavex reporting the results for the AVATAR study. *Downing* Action, Dkt. No. 1 at ¶54. Whether and to what extent Anavex's statements about the AVATAR study were corrected by that disclosure is an issue unto itself that Mr. Downing can litigate in the *Downing* action, if the actions are not consolidated. Given the differences between the two theories of liability, that would appear to be the better course of action.

The *Blum* action seeks to hold Defendants liable for misrepresenting the evaluation methods Anavex would employ in the EXCELLENCE study whereas the *Downing* action appears to focus on Defendants' statements about the AVATAR study. Thus, the cases focus on different aspects of Defendants' statements and operations. Consolidation would not be appropriate in this instance, even though the cases allege similar causes of action under the Exchange Act. Keeping the cases separate would allow investors who purchased prior to the February 1, 2022 start date in the *Blum* Class Period (like Mr. Downing) to pursue a recovery.

By comparison, there are occasions where modifications to the class definition are warranted. Mr. Downing flags two cases in which Ms. Huey's counsel filed additional complaints (in actions unrelated to the matter at bar). The first case, *In re Humanigen Inc. Securities Litigation*, involved an additional complaint that expanded the class period for the purpose of naming an additional defendant. The additional complaint was not opposed and, in fact, the parties in the case

7

stipulated to a leadership structure. Subsequent filings in the case incorporated the expanded class period and the additional defendant. The second case, *In re Paycom Software, Inc. Securities Litigation*, did not change the class period but instead adopted the class period from an earlier filed related complaint; the only change made was to the class definition to include sellers of put options to ensure they were part of the class. Thus, in both instances though, the additional complaints were filed for good reason.

### III.     CONCLUSION

For the foregoing reasons, Ms. Huey respectfully requests that the Court grant her Motion and enter an Order: (1) appointing Movant as Lead Plaintiff, (2) approving her selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem just and proper.

Dated: June 7, 2024                                             Respectfully Submitted,

**LEVI & KORSINSKY, LLP**

By: */s/ Adam M. Apton*
Adam M. Apton (AS-8383)
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Lead Counsel for Quintessa Huey and [Proposed] Lead Counsel for the Class*

8